Mead *v.* Town of Derby.

———•◆•———

## ANDREW MEAD *vs.* THE TOWN OF DERBY.

An amendment of the charter of the borough of *B* in the town of *D*, passed in 1858, gave to the borough control over its streets and imposed upon it certain duties with regard to their maintenance; but, taken in connection with other parts of the charter and with a general statute with regard to boroughs, it was not clear that it was intended to impose upon the borough the duty of keeping the streets in repair and make it liable for defects in them. The town in fact continued to repair the streets of the borough as before, down to the year 1870, when the plaintiff was injured by falling into an excavation made by the town in repairing one of the streets in question. The town had also in one instance paid damages for an injury caused by a defect in one of the streets, and in 1872 it took certain steps provided for by an act passed in 1870, by which a town which contained a borough might relieve itself from further liability for the streets of the borough. Held, under all the circumstances, and in view of the fact that the town was by statute liable for defects unless the duty of repairing was clearly imposed upon some other corporation, that the town was to be regarded as liable for the injury.

CASE, for an injury from a defect in a highway of the defendant town; brought to the Court of Common Pleas of New Haven county. The facts were found by a committee, and the court reserved the case on the facts for the advice of this court. The case is sufficiently stated in the opinion.

*Gardner,* for the plaintiff.

*Torrance*, for the defendants.

PARK, J. The statute (Gen. Statutes, tit. 31, sec. 1,) provides that the several towns in this state shall make, build and keep in good and sufficient repair, all the necessary highways and bridges within their respective limits, except where it belongs to some particular person or corporation to maintain such highways and bridges." The duty therefore devolved upon the town of Derby, the defendant in this case, to keep the highway in question free from defects, unless it clearly appears from the finding of the court that this obligation was imposed upon the borough of Birmingham.

It is manifest that the defendants considered themselves burdened with the performance of this duty, notwithstanding the language of the charter of the borough and the provisions of the statutes in regard to highways within the various boroughs of the state. For the case finds that it was the uniform practice of the defendants to work and keep in repair the highways within the limits of the borough until a recent period, when they relieved themselves from further responsibility by taking advantage of the statute of 1870. It further appears that down to that time the selectmen of the town exercised jurisdiction over the highways within the limits of the borough, and took upon themselves the care and management of the same, and expended large sums of money belonging to the town in making improvements upon the streets by widening and filling the same, and removing obstructions therefrom; also that the defendants in one instance paid damages to a party who had received injury in consequence of a defect in one of the streets of the borough; and that at the time in question they were engaged by their teams and workmen in making the excavation that caused the injury to the plaintiff. It further appears that as late as the month of September, 1872, the selectmen of the town advised the town to accept the provisions of the act of 1870, and pursue the course therein prescribed; and the town in legal meeting duly warned and held, acted accordingly. This action of the town was, in effect, an admission of their liability to the plain-

tiff for the injury he had received, for it was taken some months after the injury had occurred.

So it appears that the defendants considered themselves responsible for the proper condition of the streets and highways within the limits of the borough. In doubtful cases, the construction which the parties themselves have given, by a long course of conduct, to a contract, or even to the provisions of a private statute affecting their respective rights and duties, may sometimes be considered in determining what those rights and duties are under such provisions. In this case, inasmuch as the construction given by these parties to the charter of the borough is one that may properly be made, I am inclined to think, under all the circumstances detailed in the motion, that it ought to be adopted.

The part of the charter most favorable to the construction that the defendants now claim should be given to it, is the last paragraph of the sixth section of the amendment made to the charter in the year 1858, which reads as follows: " All the public squares, public grounds, streets, highways, and public walks, within the limits of the borough, now existing or hereafter created, shall be under the exclusive direction and control of the borough and the officers thereof; and the expense of maintaining the same shall be borne exclusively by the borough and the inhabitants thereof." But this part of the charter must be construed in connection with other parts of the same instrument, and in reference to the various statutes regarding highways within the limits of boroughs.

The 24th section of the statute concerning highways and bridges, (Gen. Statutes, page 497,) as amended by the act passed in 1866, is as follows: " Nothing in the preceding section shall authorize the selectmen of any town to lay out any highway within the limits of any city or borough in such town; but the laying out, discontinuing, altering, and grading highways and streets in such cities or boroughs, shall be done solely by the proper authorities thereof, according to the provisions of their respective charters."

The second section of the act of 1866 further provides that " all cities and boroughs which are not authorized and

Mead *v.* Town of Derby.

empowered by their respective charters to lay out, alter and grade such highways and streets as public necessity and convenience require, are hereby authorized and empowered to do so, within their respective limits, in conformity to the provisions of the statute to which this is an addition."

The object these statutes have in view in conferring upon cities and boroughs the control of their streets, highways and public grounds, must be obvious. The inhabitants of towns residing without the limits of cities or boroughs within the limits of such towns, are generally but little interested in the prosperity of such cities or boroughs, although parts of such towns. They are but little interested in their public squares, public grounds, streets, highways and public walks, although greatly needed to increase the population, wealth and general prosperity of the cities and boroughs; while the inhabitants of such cities or boroughs are greatly interested in the same, in order to promote the objects mentioned. Such improvements cost a large sum of money in their construction; and if the matter was left to all the legal voters of the town to determine whether or not they should be made at the expense of the town, the voters outside the limits of such city or borough would control the matter in many instances, and the prosperity of the city or borough would be unfavorably affected.

These statutes were passed to remedy this evil, by giving to the cities and boroughs the right to determine for themselves what improvements in these respects should be made. But inasmuch as the inhabitants of such city or borough would be far more benefited by such improvements than those in other parts of the town, it was considered just and proper that the expense of constructing such improvements should be borne by the city or borough; and hence the statutes declare, among the other things enumerated, that the grading of streets and highways shall be done solely by the proper officers of the city or borough. This part of the statutes imposes the expense of *constructing* streets and highways within their limits upon the city or borough; but nothing is said in relation to afterwards keeping the same in good and sufficient

repair, or in relation to responsibility for defects therein that shall occasion injury. These statutes in this respect are similar to those statutes that impose the expense of constructing highways in certain cases, upon those especially benefited thereby; and the motive in passing them, no doubt, was similar to that which induced the legislature to pass the statutes referred to.

If the statutes in question had gone further than this, and imposed upon cities and boroughs the expense of maintaining their streets and highways when constructed, and as a consequence thereof the responsibility for defects therein which should occasion injury, it is easy to see that injustice would have been done; for these statutes do not relieve the cities and boroughs from their portion of the expenses necessarily incurred by the laying out, constructing and keeping in repair the highways in other portions of the towns in which they are situated; nor from their share of the responsibility for injuries caused by defects therein. They are parts of the towns for these purposes; and are further burdened with the whole expense of constructing highways within their own limits. It is clear, therefore, that to go further, and impose upon them the additional expense and responsibility of keeping their streets in good and sufficient repair, would savor of hardship.

The view here taken of these statutes is strongly supported by the statute passed by the legislature in 1870. That statute takes it for granted that the statutes we have considered impose no obligation upon cities or boroughs to keep their streets in good and sufficient repair, and no responsibility for defects therein that occasion injury; for it prescribes the mode whereby towns may relieve themselves from these burdens if they choose to accept the provisions of the statute, and change the responsibility from themselves to the cities and boroughs.

Does the charter of the borough in question do any thing more than was intended to be done by the statutes we have considered? This depends upon the proper construction to be given to the last clause of the paragraph quoted from the

Mead v. Town of Derby.

charter, which is as follows: "And the expense of maintaining the same shall be borne exclusively by said borough and the inhabitants thereof." The defendants construe this clause to mean, that the expense of maintaining the streets and highways of the borough shall be borne exclusively by the borough; while the plaintiff insists that the passage has reference only to the expenses necessarily attending the exclusive control of the streets and highways granted to the borough.

In order to determine this question, it is important to ascertain what power was conferred and duty imposed upon the borough in relation to its highways.

All the privileges granted upon this subject are contained in sections three, four, five and six of the amendment made to the charter in the year 1858. Section three of the amendment provides that the warden and burgesses of the borough shall have power and authority to lay out new highways, and to alter, extend and enlarge existing ones, as they shall judge needful. Section four prescribes the mode to be pursued when the warden and burgesses shall determine to alter, extend or enlarge any street or highway. Section five authorizes them to assess those who are specially benefited by the lay-out or alteration of streets and highways, and to pay the expenses of the same, or such part thereof as they shall deem reasonable. Section six allows an appeal to parties aggrieved by such assessment. And then follows the paragraph quoted, as a summary of the whole subject.

It is manifest that these sections confer upon the borough the entire control of its streets and highways for certain purposes. It has the sole power to lay out, extend, alter, enlarge and discontinue its highways. The authority conferred by the charter in this respect is the same as that conferred upon other boroughs by the statutes which have been considered; and the object the legislature had in view in granting it must have been the same. Why then should the legislature impose greater burdens upon this borough for the grant of its privileges in relation to its highways, than had been previously imposed upon cities, or were subsequently imposed upon other

boroughs, for the grant of like privileges in relation to their highways ?   Here, as there, the borough was burdened with the expenses necessarily incurred in the construction of new streets or in the alteration of old ones.   This appears by section five of the charter.   That section provides that it shall be the duty of the warden and burgesses in such cases to assess those specially benefited by such improvements, to the extent, in some cases, of the whole expense of the same. And, furthermore, the grant of power to make certain improvements, carries along with it, by necessary intendment, the expenses attending the construction of such improvements, unless otherwise provided.   Thus it appears that the borough in question had no greater privileges conferred upon it by the charter than were conferred upon other boroughs by the statutes we have considered ; and was also burdened to the same extent in consequence of such privileges.   Can any good reason be given why its burdens should be greater than theirs ?   In passing the act of 1870 the legislature seems to have regarded it as unjust to burden other boroughs with the duty and responsibility of keeping their streets in good and sufficient repair, unless they should have their just proportion of the public money raised by the towns for such purpose. If then the clause in question imposes upon this borough the duty and responsibility of keeping its streets in sufficient repair, with no share of the public money of the town for the purpose, it is difficult to avoid the conclusion that the legislature intended to deal with this borough inequitably, and make its case an exception to the just rule applied generally to the cities and boroughs of the state.   We must of course avoid a conclusion that imputes such an intention to the legislature if we can do so by any fair construction of the clause. Furthermore, the charter studiously avoids saying any thing whatsoever directly, in relation to the repairs of the highways of the borough, or the responsibility for defects therein ; and it is hardly possible that a matter of so much importance to the public, to the town, and to the borough, should be left by the legislature to the simple phrase in question, of doubtful meaning, to say the least, as sufficient of itself to change a

positive statute on the subject, and create a new liability of great importance and involving a great expense, and fasten it permanently upon the borough. It is further to be noticed that the paragraph in which this phrase is contained, is the last one on the subject of the highways of the borough. It is short, and its subject matter is wholly disconnected from what precedes it in the same section. It appears to be, and probably was intended to be, merely a summary of the privileges granted and burdens imposed by the previous sections of the charter, and nothing more.

These considerations constrain me to construe the phrase in question as it was construed by these parties till long after the injury in question occurred; to wit, that " maintaining the same " means, and means only, maintaining or bearing the expenses necessarily attending the exercise of the powers conferred by the charter upon the borough in relation to its highways, such as the expenses attending the construction and alteration of the same. I think judgment should be advised for the plaintiff.

CARPENTER, J. I concur in the result, but I am not prepared to assent to all the views expressed in the foregoing opinion. It is perfectly clear that the plaintiff is entitled to recover the damage sustained, either from the town or borough. The real contest, therefore, is between the town and the borough. It is equally clear that the negligence which caused the injury was in fact the negligence of the town and not of the borough, and consisted in leaving the road in an unsafe condition over night, while being repaired, and not in neglecting to repair.

The obligation to maintain the highways generally is imposed upon the defendants by general statute, which, *primâ facie*, establishes their liability in this action. It is said, however, that a clause in the amendment to the borough charter, passed in 1858, transfers the duty of maintaining the highway in question from the town to the borough. I think that clause will admit of, and perhaps requires, that construction; but it is a private act, affecting only the town and the

borough, and neither corporation has ever put that construction upon it. On the contrary, both parties, the town and the borough, have practically construed it otherwise. The defendants for more than fourteen years after the amendment of the charter, and until after the injury, continued to repair the highways within the borough, at their own expense, precisely as they had done before, and in one instance paid damages for an injury caused by their neglect so to do. The inhabitants of the borough have acquiesced in such action by the town, and, presumptively, have paid their highway taxes into the town treasury. The amendment, construed as the defendants now contend that it should be, never in fact went into operation until after the commencement of this suit. The practical interpretation thus put upon the charter doubtless induced the plaintiff, who is not supposed to be familiar with the private acts, to believe that he must look to the town for redress. Having done so, and established his claim, it is inconsistent with my notions of justice to permit the defendants now to deny their liability; especially as the equities against them are so strong, and the defense is so purely technical.

SEYMOUR, C. J., and FOSTER, J., concurred in advising judgment for the plaintiff.